UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL HOWARD, | ) |
| | ) |
| Plaintiff, | )    11 C 2442 |
| | ) |
| vs. | )    Judge Feinerman |
| | ) |
| PATRICK DONAHOE, Postmaster General, United States Postal Service, | ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Daniel Howard brought this lawsuit under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.*, against his employer, Patrick Donahoe, Postmaster

General of the United States Postal Service ("USPS"). The complaint alleges that USPS fired

Howard, who is male, as a result of sex discrimination. Doc. 9. USPS has moved for summary

judgment. Doc. 31. The motion is granted.

**Background**

Consistent with the local rules, USPS filed a Local Rule 56.1(a)(3) statement of

undisputed facts along with its summary judgment motion. Doc. 33. Despite having been served

with a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1,

Doc. 34, Howard filed no Local Rule 56.1(b)(3)(B) response. Howard's status as a pro se litigant

does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508

U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation

should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Coleman*

*v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.");

*Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). Given Howard's failure to file a Local Rule 56.1(b)(3)(B) response, the facts set forth in USPS's Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880-81, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Smith v. Lamz,* 321 F.3d 680, 682-83 (7th Cir. 2003). The pertinent facts are as follows.

Howard worked as a maintenance and support clerk in the stockroom at the USPS Irving Park Road Processing and Distribution Center in Chicago, Illinois. Doc. 33 at ¶ 1; Doc. 33-1 at 2. On September 30, 2009, USPS employee Roberta Grant went to the stockroom to get rubber gloves that she and her co-workers used in their mail processing unit. Doc. 33 at ¶ 2. When Howard returned to the stockroom, USPS employee Barbara Montgomery told him that Grant had taken a box of gloves, and Howard went looking for Grant. *Id*. at ¶ 3. Howard found Grant and confronted her about taking the gloves. *Id*. at ¶ 4. Howard claims that he simply asked Grant why she took the gloves and that Grant "[b]egan to babble something, walking up on me

spitting and pointing her finger in my face." *Id*. at ¶ 5. But according to Grant and USPS employee Rosa Hernandez, Howard demanded that Grant give the gloves back, a heated argument ensued, and the argument ended with Howard spitting in Grant's face. *Id*. at ¶ 6.

Several employees gave statements about what happened that night, including Grant, Howard, and Hernandez. *Id*. at ¶ 7. The next day, USPS supervisor Michael Price began an investigation. *Id*. at ¶ 8. Price compiled the statements he had been given about the incident, took additional statements, and conducted further interviews, including one with Hernandez. *Id*. at ¶¶ 9-10. Hernandez told Price she was sitting five feet away from Grant and Howard at the time of the confrontation, and she confirmed Grant's account of Howard's conduct, saying that she saw Grant and Howard "arguing face to face and then I saw Howard tilting his head back and he spitted on Roberta's face." *Id*. at ¶¶ 11-13. Price reported the information he learned to Howard's direct supervisor, Donald Rice, and on October 26, 2009, Rice served Howard with notice proposing to terminate him from the USPS. *Id*. at ¶ 14. Recounting the findings of the investigation, and concluding that Howard had initiated a verbal and physical altercation with Grant, the notice cited Howard with several violations of USPS policy, including the policies against threats and assaults in the workplace. *Id*. at ¶¶ 15-16.

Howard sought Equal Employment Opportunity ("EEO") counseling and then filed a formal complaint alleging that Price and Rice had discriminated against him by firing him because of his sex. *Id*. at ¶ 17; Doc. 9 at 7. During the EEO investigation, Howard was asked why the decision to fire him rather than Grant resulted from sex discrimination. Doc. 33 at ¶ 18. Howard responded that his supervisors had acted in "fear" and that Grant had "friends in high places." *Id*. at ¶ 19. An administrative law judge reviewed Howard's case and dismissed it,

finding that Howard could not make out a prima facie case of sex discrimination because he had

no evidence that similarly situated female employees had been treated better than he had been

treated in similar circumstances, and he produced no evidence that the stated reasons for his

dismissal were pretextual. *Id*. at ¶ 20.

### Discussion

Howard filed no brief in opposition to USPS's summary judgment motion. Howard's

failure to file a brief "does not ... automatically result in judgment for" USPS, which "must still

demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (internal

quotation marks omitted). As noted above, Howard claims that USPS discriminated against him

on the basis of sex in violation of Title VII. A plaintiff may fend off summary judgment on a

Title VII claim through either the direct or indirect methods of proof. *See Coleman v. Donahoe*,

667 F.3d 835, 845 (7th Cir. 2012).

"Under the 'direct method,' the plaintiff may avoid summary judgment by presenting

sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus

motivated an adverse employment action." *Ibid*. "Direct evidence is evidence that, if believed

by the trier of fact, would prove discriminatory conduct on the part of the employer without

reliance on inference or presumption. In short, direct evidence essentially requires an admission

by the decision-maker that his actions were based upon the prohibited animus." *Rhodes v. Ill.*

*Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citations and internal quotation marks

omitted); *see also Coleman*, 667 F.3d at 860; *Everett v. Cook Cnty.*, 655 F.3d 723, 729 (7th Cir.

2011). "A plaintiff can also prevail under the direct method of proof by constructing a

'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional

discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citations and internal quotation marks omitted); *see also Everett*, 655 F.3d at 729 (circumstantial evidence is "evidence that points to discriminatory animus through a longer chain of inferences"). Circumstantial evidence typically falls into one of three categories: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011); *see also Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). The appropriate focus under the direct method "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Everett*, 655 F.3d at 729; *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011).

Because Howard did not even attempt to comply with Local Rule 56.1(b), the factual predicate on which USPS's summary judgment motion must be decided is limited to the facts set forth in USPS's Local Rule 56.1(a)(3) statement. Those facts, which are set forth above, offer no direct or circumstantial evidence that USPS's decision to terminate Howard was motivated by discriminatory animus towards him on the basis of his sex. Rather, Howard was terminated because Price, the supervisor who investigated Howard's incident with Grant, and Rice, Howard's direct supervisor, concluded that Howard had violated USPS policy by initiating a

verbal and physical altercation with Grant. Without evidence of discriminatory animus, Howard cannot succeed under the direct method.

The indirect method has three steps. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). First, the plaintiff must establish a prima facie case of discrimination, which requires evidence that: "(1) [he] is a member of a protected class, (2) h[is] job performance met [the employer's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Coleman*, 667 F.3d at 845 (internal quotation marks omitted) (third alteration in original). Second, if the plaintiff "establishes a prima facie case, then the burden shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for h[is] termination which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008) (internal quotation marks omitted). Third, "[i]f the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). "Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Silverman*, 637 F.3d at 733–34 (alteration in original) (internal quotation marks omitted); *see also Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007).

"The prima facie case and pretext inquiries often overlap; [a court] may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision" and if the plaintiff's failure

to rebut that explanation provides a sufficient ground for granting summary judgment to the defendant. *Adelman-Reyes,* 500 F.3d at 665-66; *see also Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007) (noting that "the second prong [of the prima facie case] is inextricably intertwined with the pretext analysis"); *Vanasco v. National-Louis Univ.,* 137 F.3d 962, 966 (7th Cir. 1998) (addressing pretext without first determining whether the plaintiff had made a prima facie case). USPS has set forth a nondiscriminatory reason for terminating Howard: that after an investigation, Price and Rice concluded that Howard violated USPS policy by initiating a verbal and physical altercation with Grant on September 30, 2009. Therefore, to survive summary judgment, Howard must offer some evidence that the stated reason for his termination was pretextual, meaning that it was a lie.

There is no evidence of record suggesting that USPS's stated reason for terminating Howard was pretextual or that the real reason for terminating Howard was a desire to discriminate against him because he is male. In fact, during the EEO proceedings, when asked why he believed he rather than Grant was terminated, Howard said that Rice acted out of "fear" and that Grant had "friends in high places." Doc. 33 at ¶ 19. Howard's submission is pure speculation, and thus offers no basis for undermining USPS's stated reason for terminating him. *See Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012) ("it is well-settled that conjecture alone cannot defeat a summary judgment motion") (internal quotation marks omitted); *Hanners v. Trent*, 674 F.3d 683, 692 (7th Cir. 2012) ("Mr. Hanners's assertion that he would not have been suspended for thirty days had he been an African American amounts to mere speculation, which this court consistently has held is insufficient to avoid summary judgment"); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 669 (7th Cir. 2006) (affirming summary judgment in an

employment discrimination suit where plaintiff "failed to present any evidence that [defendant's] proffered reasons were pretextual"). But even if Howard were right that he rather than Grant was terminated because Rice acted out of fear and Grant had friends in high places, his sex discrimination claim still would fail. Those reasons for firing Howard may not be good ones, but they have nothing to do with sex discrimination, and an employee fired for bad but not discriminatory reasons has no Title VII claim. *See Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) ("[t]he Civil Rights Act of 1964 does not require employers to have 'just cause' for sacking a worker"); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 324 (7th Cir. 2003) ("The reasons for [the plaintiff's] termination are not scrutinized as to whether they were right or wrong, but only whether the reason for which the [employer] discharged the [employee] was discriminatory.") (internal quotation marks omitted); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (in affirming the dismissal of an employment discrimination claim, reasoning that "[w]hile the [challenged employment] decision arguably was wrong, [the plaintiff] has not shown it was based on illegal discrimination").

### Conclusion

For the foregoing reasons, USPS's motion for summary judgment is granted. Judgment will be entered in favor of USPS and against Howard.

November 19, 2012

_____
United States District Judge